1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11    AMANDEEP SINGH,                          Case No. 1:25-cv-01788-CDB (HC)

12                    Petitioner,              ORDER GRANTING PETITIONER'S MOTION
                                               FOR TEMPORARY RESTRAINING ORDER
13          v.                                 AND REQUIRING RESPONDENTS TO
                                               RELEASE PETITIONER FROM CUSTODY
14    SERGIO ALBARRAN, *et al.*,               IMMEDIATELY

15                    Respondents.             (Doc. 2)

16

17

18          Pending before the Court[1] is Petitioner Amandeep Singh's motion for temporary restraining

19    order ("TRO"), filed on December 9, 2025.  (Doc. 2).  On December 16, 2025, Respondents Sergio

20    Albarran, in his official capacity as Field Officer Director of Immigration and Customs

21    Enforcement ("ICE"), San Francisco; Todd M. Lyons, in his official capacity as Acting Director of

22    ICE; Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security

23    ("DHS"); and Pamela Bondi, in her official capacity as Attorney General of the United States

24    (collectively, "Respondents") filed their reply, and on December 18, 2025, Petitioner replied.

25    (Docs. 8, 10).  Because neither party requests a hearing (Doc. 8 at 9; Doc. 10 at 6), the Court deems

26    the motion submitted for decision without oral argument.  (Doc. 4).

27    _____

28          [1] Both parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in
      this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 9).

## I.    <u>Relevant Procedural and Factual Background</u>

Petitioner Amandeep Singh, a federal detainee proceeding by counsel, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, while in custody of ICE at the Mesa Verde Processing Center, located in Kern County, California, which is where he is currently detained.  (Doc. 1).  After Petitioner filed the instant motion for temporary restraining order[2] (Doc. 2), on December 9, 2025, the Court set a briefing schedule on the motion.  (Doc. 4).

Petitioner, a citizen of India, entered the United States of America on February 8, 2022.[3] (Doc. 2 at 3; Doc. 1-4).  Petitioner fled India after "being persecuted by the Indian Central Government for supporting an opposition party that demands an Independent State, [Khalistan]." *Id.* at 4; (Doc. 1 at 7).  According to the Form I-220A ("Order of Release on Recognizance") attached to his petition, Petitioner was arrested by the U.S. Border Patrol ("USBP") on or about February 8, 2022.  (Doc. 1-4).  On February 10, 2022, he signed the Order of Release on Recognizance and agreed to comply with numerous conditions set forth therein, including that he enroll and participate in the "Alternatives to Detention (ATD)" program as designated by the U.S. Department of Homeland Security ("DHS").  *Id.*  The Order of Release on Recognizance provides, in part, that "[f]ailure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by the Department of Homeland Security."  *Id.*  Respondents acknowledge that USBP encountered Petitioner at Yuma, Arizona, and determined he had unlawfully entered the country from Mexico, and that Petitioner was enrolled in the Intensive Supervision Appearance Program ("ISAP").  (Doc. 8 at 2).

According to the Form I-862 "Notice to Appear" attached to his petition, on or about March 16, 2022, Respondents initiated removal proceedings against Petitioner, pursuant to 8 U.S.C. § 1229a, asserting that Petitioner was inadmissible to the United States of America under 8 U.S.C. §

---

[2] For purposes of this order, the Court will construe Plaintiff's motion for temporary restraining order as a motion for preliminary injunction.

[3] The factual background is drawn from Petitioner's petition for writ of habeas corpus and other evidence in the record.  (Docs. 1, 2, 8).

1   1182(a)(6)(A)(i).  (Doc. 1-3).  In the Notice to Appear, Respondents directed Petitioner to appear

2   for a hearing before an immigration court on July 20, 2022.  *Id.*

3         Although not alleged in the petition, in his motion for TRO, Petitioner asserts that he

4   married his wife, a citizen of the United States of America, on October 3, 2025.  Petitioner lived in

5   Bakersfield, California, prior to his arrest and his mother and sister are citizens of the United States

6   of America.  Petitioner was providing for his spouse before he was detained and funding her

7   education.  (Doc. 2 at 3-4).

8         Petitioner alleges that he was re-arrested by immigration authorities on November 1, 2025,

9   and has remained detained since that date.  (Doc. 1 ¶¶ 5, 23).  Respondents likewise represent

10  Petitioner was re-arrested on November 1, 2025.  (Doc. 8 at 2); *cf.* (Doc. 2-1 at 21) (Petitioner's

11  assertion in moving for TRO that he has been detained since September 30, 2025).

12  **II.      Governing Authority**[4]

13        "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v.*

14  *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90

15  (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

16  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

17  balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v.*

18  *Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter*, 555 U.S. at 20); *Weinberger v. Romero-Barcelo*,

19  456 U.S. 305, 311–12 (1982)).  "Under *Winter*, plaintiffs must establish that irreparable harm is

20  likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies*

21  *v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Likelihood of success on the merits is a threshold

22  inquiry and is the most important factor."  *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784,

23  797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).

24  "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing

25  than likelihood of success on the merits—then a preliminary injunction may still issue if the balance

26  of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied."

27  ────────────────

28  [4] The Court has jurisdiction over Petitioner's claim that he is improperly detained, pursuant to 28 U.S.C. § 2241.  *See* (Doc. 1).  In opposing issuance of a preliminary injunction, Respondents do not challenge the Court's jurisdiction over this claim.  *See generally* (Doc. 8).

1    *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks

2    and citations omitted).

3        Preliminary injunctions are intended "merely to preserve the relative positions of the parties

4    until a trial on the merits can be held, and to balance the equities at the litigation moves forward."

5    *Lackey v Stinnie*, 604 U.S. 192, 200 (2025) (citations and quotations omitted). "The status quo

6    refers to 'the last uncontested status which preceded the pending controversy.'" *E.A.P.C. v.*

7    *Wofford*, No. 1:25-cv-01546-JLT-CDB, 2025 WL 3289185, at *8 (E.D. Cal. Nov. 25, 2025)

8    (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963)).

9    **III.    Discussion**

10       **A.    Exhaustion**

11       "Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before

12    filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing

13    *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires

14    "as a prudential matter, that habeas petitioners exhaust available judicial and administrative

15    remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United*

16    *States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is

17    entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been

18    exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)).

19    "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it

20    may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement."

21    *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d

22    742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although

23    courts have discretion to waive the exhaustion requirement when it is prudentially required, this

24    discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion

25    requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v.*

26    *Mathews*, 588 F.2d 759, 762 n.8 (9th Cir. 1978) ("Although the application of the rule requiring

27    exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly

28    to be disregarded.").

1    Petitioner contends that exhaustion should be waived because it would be futile for him to

2    seek release by administrative means and agency delay would result in irreparable injury.  (Doc. 2

3    at 22).  Petitioner asserts that a request for a bond hearing would be futile as DHS policy instructs

4    ICE employees to consider anyone arrested within the United States and charged with being

5    inadmissible to be an "application for admission," detained under 8 U.S.C. § 1225(b), and subject

6    to indefinite mandatory detention with no statutory right to a bond hearing.  (Doc. 2-1 at 22-23;

7    citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)).

8    Respondents assert that exhaustion is warranted.  In support, Respondents argue that this

9    Court would "benefit from the [Board of Immigration Appeals'] expertise," as it is a subject-matter

10    expert in immigration bond decisions and "well-positioned to assess the interplay" between §§ 1225

11    and 1226.  Respondents represent that waiving exhaustion would encourage other detainees to

12    bypass the Board of Immigration Appeals ("BIA") and individuals would have little incentive to

13    seek relief before the BIA, as well as increase the burden on the federal courts.  (Doc. 8 at 5-6;

14    citations omitted).  Respondents argue that accepting the Petitioner's proffered argument for

15    irreparable harm, namely additional detention and separation, would result in "every single

16    individual who alleges unlawful detention" meeting the irreparable harm standard.  *Id.* at 6-7.

17    The Court finds that the prudential exhaustion requirement should be waived as it would be

18    futile to seek release by administrative means.  Specifically, Respondents contend that Petitioner is

19    subject to indefinite mandatory detention under 8 U.S.C. § 1225(b) (*see* Doc. 8), and under that

20    framework, Petitioner has no statutory right to a bond hearing during his course of detention and

21    therefore lacks recourse through statutory or administrative means.  *See Jennings v. Rodriguez*, 583

22    U.S. 281, 282 (2018) ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond

23    hearings during the course of their detention.");  *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201

24    (9th Cir. 2022).  Further, the BIA has recently held that all noncitizens present within the country

25    without admission are seeking admission pursuant to § 1225, rendering any administrative relief

26    futile.  *See J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *7

27    (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly

28    be futile given the BIA's recent holding that all noncitizens present in the United States without

1    admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be

2    detained.") (citing *Hurtado*, 29 I&N Dec. 216).

3        Thus, the Court will waive the prudential exhaustion requirement for Petitioner's claim for

4    habeas corpus relief. *See Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228, at

5    *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already

6    applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which

7    detainees are subject to mandatory detention without bond under § 1225(b)(2)); *e.g.*, *Rodriguez v.*

8    *Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the

9    irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v.*

10   *Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *Beltran v. Noem*, No. 25cv2650-LL-DEB, 2025 WL

11   3078837, at *4 (S.D. Cal. Nov. 4, 2025); *Kuzmenko v. Phillips*, No. 25-cv-00663-DJC-AC, 2025

12   WL 779743, at *4 (E.D. Cal. Mar. 10, 2025)).

13       **B.**    **Likelihood of Success on the Merits**

14           ***1.***    ***Statutory Construction***

15               a.   Parties' Contentions

16       Petitioner asserts that the plain text of §§ 1225 and 1226 demonstrate that Petitioner is not

17   subject to mandatory detention. Petitioner argues that § 1226(a) applies to Petitioner because, by

18   the statute's text, it attaches where a person is detained "pending a decision on whether the alien is

19   to be removed from the United States." Petitioner asserts that § 1226 explicitly establishes that this

20   authority includes noncitizens who are inadmissible pursuant to 8 U.S.C. § 1182(a). (Doc. 2-1 at

21   5; citing 8 U.S.C. § 1226(a)).

22       Petitioner argues that the Laken Riley Act ("LRA") added language to § 1226 setting forth

23   categories of individuals subject to the mandatory detention provisions at § 1226(c), namely

24   individuals who have entered the country without inspection, those who are inadmissible because

25   they are present in the country without admission, those who lack valid documentation to enter,

26   and those who have been arrested, charged with, or convicted of certain crimes. Petitioner asserts

27   that, by including such categories in § 1226(c) under the LRA amendments, Congress clarified that

28   § 1226(a) covers persons like Petitioner because the specific exceptions of the LRA logically leave

6

1    those who are inadmissible noncitizens, and who are not implicated under said categories, subject

2    to § 1226(a)'s default rule. (Doc 2-1 at 6-7; citing, *inter alia*, *Rodriguez*, 779 F. Supp. 3d at 1259).

3          Petitioner further argues  that the text of § 1226 demonstrates that subsection (a) covers

4    those who are present and residing within the country and who are not at the border seeking

5    admission, and the text of § 1225 reinforces this interpretation. *Id.* (citing *Jennings*, 583 U.S. at

6    297).

7          Respondents assert that Petitioner falls under the specific detention authority of § 1225,

8    instead of the general authority found at § 1226(a), because the narrower provision of § 1225

9    regarding "applicant for admission" covers Petitioner. Respondents argue that the phrase "seeking

10   admission" in § 1225(b)(2)(A) must be read in the context of the definition of "applicant for

11   admission" in § 1225(a)(1), namely those individuals both present in the country without admission

12   and those who arrive in the United States. (Doc. 8 at 7-8).

13                                  b.  Analysis

14         Based on the facts before the Court, and undisputed by Respondents (*see* Doc. 8), Petitioner

15   was already in the United States at the time of his arrest. Petitioner attaches to his petition an Order

16   of Release on Recognizance, dated February 8, 2022, and signed by an immigration officer on

17   February 10, 2022, releasing Petitioner under a set of conditions. These conditions required that

18   Petitioner not change his place of residence prior to securing permission from the immigration

19   officer, not violate any laws, assist the DHS in obtaining necessary travel documents, and stated

20   Petitioner was not authorized for employment. Petitioner was warned that failure to comply with

21   the conditions may result in a revocation of release and arrest. *See* (Doc. 1-4). Petitioner represents

22   that he lived in the community "without incident" (Doc. 2-21 at 20) and Respondents neither

23   challenge this representation nor assert that Petitioner violated any such conditions; nor can the

24   Court locate any such facts in the record. *See* (Docs. 1, 2, 8, 10).

25                          *Relevant Text of § 1225*

26         Section 1225 governs the detention of noncitizens seeking admission into the United States.

27   *See Jennings*, 583 U.S. at 289. In contrast, § 1226 sets forth a "default rule" for noncitizens already

28   present within the United States. *Id.* at 288.

1    Relevant here, § 1225(b)(1) applies to aliens "arriving in the United States" or aliens who

2  have "not been admitted or paroled into the United States" and have not "affirmatively shown, to

3  the satisfaction of an immigration officer, that the alien has been physically present in the United

4  States continuously for the 2-year period immediately prior to the date of the determination of

5  inadmissibility."  8 U.S.C.A. § 1225(b)1)(A)(i), (iii)(II).  The plain language of the statute

6  demonstrates that it is inapplicable to Petitioner.  Petitioner is not "arriving" in the United States of

7  America, but rather *arrived* in February 2022 and has remained here for a period of over three

8  years.

9    Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for

10  admission, if the examining immigration officer determines that an alien seeking admission is not

11  clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding

12  under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).  For § 1225(b)(2)(A) to apply, an

13  examining immigration officer must determine that the individual is (1) an "applicant for

14  admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be

15  admitted."  *See Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), -- F. Supp. 3d --, 2025 WL

16  2716910, at *4 (E.D. Cal. Sept. 23, 2025) (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D.

17  Mass. 2025)).

18    Respondents have not shown that an examining immigration officer made said

19  determinations.  They claim that an "applicant for admission" is defined as an "alien present in the

20  United States who has not been admitted or who arrives in the United States," that "[a]pplicants for

21  admission are both those individuals present without admission and those who arrive in the United

22  States," and that § 1225(b) applies "because Petitioner is present in the United States without being

23  admitted."  (Doc. 8 at 7-8).  Respondents therefore assert that, in essence, an "applicant for

24  admission" is any individual living in this country who is a noncitizen and did not lawfully enter,

25  regardless of how long they have lived within the country or whether they took affirmative steps to

26  seek admission.

27    The Court agrees with the reasoning of the courts in *Lepe* and *Martinez* in finding that

28  Respondents' interpretation of the statutory scheme is without merit.  "Seeking" means "asking

1   for" or "trying to acquire or gain."  The use of "seeking" as a present participle "necessarily implies

2   some sort of present-tense action."  *Lepe*, 2025 WL 2716910, at *5 (citing *Martinez,* 792 F. Supp.

3   3d at 218).  The relevant statutory definition of "admission" and "admitted" is "the lawful entry of

4   the alien into the United States after inspection and authorization by an immigration officer."  8

5   U.S.C.A. § 1101(a)(13)(A).  "Entry" means "a crossing into the territorial limits of the United

6   States."  *Lepe*, 2025 WL 2716910, at *5 (citing *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th

7   Cir. 2010)).  Thus, the phrase "'seeking admission means that one must be actively 'seeking'

8   'lawful entry.'"  *Lepe*, 2025 WL 2716910, at *5.

9         Here, Petitioner is not "seeking" "lawful entry" because Petitioner already entered the

10  United States over three years ago.  Petitioner crossed into the territorial limits of the country in

11  February 2022 and was ordered released on recognizance.  *See* (Doc. 1-4 at 1).  In addition,

12  Respondents treat the terms "'applicant for admission' and 'alien seeking admission' as

13  synonymous," and such an interpretation "violates the principle that Congress is presumed to have

14  acted intentionally in choosing different words in a statute, such that different words and phrases

15  should be accorded different meanings."  *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488

16  (S.D.N.Y. 2025); *see Martinez*, 792 F. Supp. 3d at 218.  Furthermore, Respondent's argument

17  would "render the phrase 'seeking admission' … mere surplusage."  *Lopez*, 795 F. Supp. 3d at 487

18  (citing, *inter alia*, *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023)

19  ("… the Government's alternative construction creates surplusage … violating the interpretive

20  principle that 'every clause and word of a statute' should have meaning.")); *see League of*

21  *California Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1019 (9th Cir. 2024) ("The rule

22  against surplusage generally prohibits us from interpreting [a statute] in a way that 'mak[es] a part

23  of it unnecessary.'") (citation omitted; alterations in original).

24        Thus, Respondents set forth an interpretation of § 1225 that ignores the plain meaning of

25  the language within the statute.

26                                    *Overall Statutory Scheme*

27        "It is a fundamental canon of statutory construction that the words of a statute must be read

28  in their context and with a view to their place in the overall statutory scheme."  *Davis v. Michigan*

9

1    *Dep't of Treasury*, 489 U.S. 803, 809 (1989).  § 1225 is titled "Inspection by immigration officers;

2    expedited removal of inadmissible arriving aliens; referral for hearing."  The term "inspection" is

3    regularly used in statutory language to refer to a process that occurs at ports of entry.  *Lepe*, 2025

4    WL 2716910, at *6 (citing *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021)).

5    Additionally, § 1225(a)(2) concerns "stowaways," namely a noncitizen who "obtains transportation

6    without the consent of the owner … of any vessel … through concealment aboard," and is therefore

7    discovered at a port of entry.  *See id.*; 8 U.S.C.A. § 1101(a)(49).

8        Further, to credit Respondents' interpretation that 1225(b)(2)(A) applies to any individual

9    who has entered the country unlawfully, without regard to the length of time they have resided

10   within the country, would render the applicability of 1226(a) unclear at best, if not entirely

11   superfluous.  *See Lopez*, 795 F. Supp. 3d at 490 ("If … anyone who entered the country unlawfully

12   … is subject to mandatory detention … then it is not clear under what circumstances § 1226(a)'s

13   authorization of detention on a discretionary basis would ever apply … there is nothing in the

14   history or application of § 1226 to even remotely suggest that it was intended to have such a narrow

15   reach.").    An interpretation of a statutory provision that "would render another provision

16   superfluous" violates a core judicial principle.  *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)

17   ("This principle, of course, applies to interpreting any two provisions in the [U.S. Code], even when

18   Congress enacted the provisions at different times.").

19       The Supreme Court has explained that "our immigration laws have long made a distinction

20   between those aliens who have come to our shores seeking admission ... and those who are within

21   the United States after an entry, irrespective of its legality.  In the latter instance the Court has

22   recognized additional rights and privileges not extended to those in the former category who are

23   merely 'on the threshold of initial entry.'"  *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)

24   (citations omitted).  The distinction historically drawn between §§ 1225 and 1226, "making sense

25   of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens

26   'seeking admission into the country,' whereas section 1226 governs detention of non-citizens

27   'already in the country.'"  *Martinez*, 792 F. Supp. 3d at 221 (citing *Jennings*, 583 U.S. at 288-89).

28   ///

1

*Laken Riley Act Amendments*

2    Where "Congress has created specific exceptions" to a specific statute or rule, it does not

3 prove that the rule does not generally apply.  To the contrary, "it proves the opposite," namely that

4 the statute or rule generally applies absent those exceptions, otherwise "the statutory exceptions

5 would be unnecessary." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393,

6 400 (2010).

7    In 2025, Congress passed the Laken Riley Act, adding § 1226(c)(1)(E), which mandates

8 detention for any noncitizen who is both inadmissible under § 1182(a)(6)(A)(i) and "charged with,

9 arrested for, convicted of, [or] admits" to committing certain crimes.  8 U.S.C.A. § 1226(c)(1)(E).

10 However, if the inadmissibility of a noncitizen was, by itself, sufficient to mandate detention under

11 section 1225(b)(2)(A), the Laken Riley Act amendment would have no effect.  *See Martinez*, 792

12 F. Supp. 3d at 221.  "This tension between sections 1225 and 1226 motivates the conclusion that

13 they apply to different classes of aliens.  Indeed, as the Attorney General has previously decided,

14 'section [1225] (under which detention is mandatory) and section [1226] (under which detention is

15 permissive) can be reconciled only if they apply to different classes of aliens.'"  *Id.* (alterations in

16 original; citing *Matter of M-S-*, 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019)).  "If § 1225(b)(2)

17 already mandated detention of any alien who has not been admitted, regardless of how long they

18 have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." *Maldonado v.

19 Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025).

20    The amendments implemented by Congress in the Laken Riley Act further support the

21 findings, as set forth by the Supreme Court in *Jennings*, that § 1225(b) applies to "aliens seeking

22 admission *into* the country," and § 1226 applies to "aliens *already in* the country." *Jennings*, 583

23 U.S. at 288-89 (emphasis added).

24    For the foregoing reasons, the Court finds that Petitioner's detention is governed by §

25 1226(a)'s discretionary framework, rather than § 1225(b)'s mandatory detention procedure. *See

26 Otero v. Robbins, et al.*, No. 1:25-CV-1790 CSK, 2025 WL 3704453, at *5 (E.D. Cal. Dec. 22,

27 2025) (collecting cases, adopting the reasoning of the *Lepe* court, and finding that "[t]his Court

28 agrees with and joins the majority of courts nationwide, including the Eastern District of California,

1    in rejecting respondents' interpretation of Sections 1225 and 1226"); *Morales-Flores v. Lyons*, No.

2    1:25-cv-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases

3    and noting "Courts nationwide, including this one, have overwhelmingly rejected respondents'

4    arguments and found DHS's new policy unlawful"); *J.Y.L.C. v. Bostock*, No. 3:25-CV-02083-AB,

5    2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (citing cases and noting that this conclusion is

6    "consistent with the holdings of dozens of district courts across the country"); *Barco Mercado v.*

7    *Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (noting that

8    this statutory interpretation "has been challenged in at least 362 cases in federal district courts,"

9    with the challengers having prevailed "either on a preliminary or final basis, in 350 of those cases

10   decided by over 160 different judges sitting in about fifty different courts").

11                          **2.    *Procedural Due Process***

12                          a.    <u>Governing Authority</u>

13        "The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be

14   deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995

15   F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V).  "The Due Process Clause 'protects

16   individuals against two types of government action': violations of substantive due process and

17   procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

18        "Procedural due process imposes constraints on governmental decisions which deprive

19   individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

20   Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "[F]reedom from

21   imprisonment—from government custody, detention, or other forms of physical restraint—lies at

22   the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

23   "Procedural due process requires that, even where a deprivation of liberty survives substantive due

24   process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52

25   (citing *Salerno*, 481 U.S. at 746).  "The 'right to be heard before being condemned to suffer

26   grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal

27   conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted).  "The

28   fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in

1    a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process

2    is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*

3    *v. Brewer*, 408 U.S. 471, 481 (1972).

4    "[T]he Due Process Clause applies to all 'persons' within the United States, including

5    aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533

6    U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the

7    Due Process Clause stands as a significant constraint on the manner in which the political branches

8    may exercise their plenary authority."). "In the context of immigration detention, it is well-settled

9    that 'due process requires adequate procedural protections to ensure that the government's asserted

10    justification for physical confinement outweighs the individual's constitutionally protected interest

11    in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d

12    1196, 1203 (9th Cir. 2011)).

13    b.    Liberty Interest and *Mathews* Factor Test

14    Here, Petitioner shows that, under procedural due process, he has an underlying, continuing

15    liberty interest from detention. Specifically, Petitioner was conditionally released on an order of

16    recognizance. (Doc. 1-4 at 1). The decision to release Petitioner appears to be a tacit acceptance

17    that Petitioner was not a flight risk nor a danger to the community. Petitioner remained released

18    from immigration detention for a significant amount of time—over three and a half years—and

19    "without incident." (Doc. 2-1 at 20). Respondents do not set forth that Petitioner failed to comply

20    with the conditions of his release. *See* (Doc. 8).

21    The undersigned agrees with other courts and other judges of this Court that noncitizens

22    released from immigration custody on general orders of supervision (like Petitioner here) have a

23    liberty interest in their freedom that implicates protections under principles of procedural due

24    process. *See Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact

25    that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a

26    protectable liberty interest and can be re-detained without process."); *see id.* ("[E]ven if

27    immigration detainees must wait months before a periodic re-review of their detention, those

28    already released on immigration bond possess an interest in their continued liberty, which grows

1    over time, and a due process right to a hearing before being re-detained."); *Nak Kim Chhoeun v.*

2    *Marin*, 442 F. Supp. 3d 1233, 1245 (C.D. Cal. 2020); accord *Doe v. Becerra*, 787 F. Supp. 3d 1083,

3    1099 (E.D. Cal. 2025) (considering in connection with a petitioner's procedural due process claim

4    that "[t]he lengthy duration of his conditional release as well as the meaningful connections

5    Petitioner seems to have made with his community during that time create a powerful interest for

6    Petitioner in his continued liberty"); *Ramazan M. v. Tonya Andrews*, No. 1:25-cv-01356-KES-SKO

7    (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the

8    government to arrest and detain an individual, a protected liberty interest under the Due Process

9    Clause may entitle the individual to procedural protections not found in the statute").

10    Because Petitioner has shown he has a protected liberty interest, the Court must determine

11    what process is due before the government may terminate that liberty interest. Here, Petitioner

12    asserts that the three-factor test articulated in *Mathews* applies in consideration of Petitioner's

13    claims implicating procedural due process. (Doc. 2-1 at 18). Respondents neither challenge nor

14    address the applicability of *Mathews*. *See* (Doc. 8). The Court agrees with Petitioner that the

15    *Mathews* test applies.

16    *Mathews* "requires consideration of three distinct factors: [(1)] the private interest that will

17    be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through

18    the procedures used, and the probable value, if any, of additional or substitute procedural

19    safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and

20    administrative burdens that the additional or substitute procedural requirement would entail."

21    *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in

22    immigration detention context); *id.* at 993 ("The appropriateness of the requirement that ICE and

23    IJs consider financial circumstances and alternative conditions of release is confirmed by the

24    balance of factors under *Mathews*[.]").

25    As to the first factor, Petitioner has shown he has a significant private interest in remaining

26    on release from detention. He has been out of immigration custody for over three and a half years,

27    and during that time, has lived in Bakersfield, California, where he has supported his spouse.

28    Nothing in the record provides that Petitioner was arrested or convicted of any crime, or has failed

1   to comply with all obligations of his release.  (Doc. 2-1 at 19).  Petitioner's continued liberty interest

2   in remaining on release is undermined by his detention.  *Doe*, 787 F. Supp. 3d at 1093-94 ("Freedom

3   from imprisonment is at the core of the Due Process Clause … The lengthy duration of his

4   conditional release [for over five years] as well as the meaningful connections [he] seems to have

5   made with his community during that time create a powerful interest for [him] in his continued

6   liberty.").

7        As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest

8   is considerable here where he has not received any bond or custody redetermination.  *Id.* at 1094;

9   *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)

10  ("'the risk of an erroneous deprivation of [petitioner's liberty] interest is high' where '[h]e has not

11  received any bond or custody redetermination hearing.'") (citation omitted).  Because there were

12  no procedural safeguards to determine if Petitioner's detention was justified, and Respondents have

13  not articulated any change in circumstances while Petitioner was on release sufficient to justify

14  Petitioner's detention, the probable value of the additional procedural safeguard of a bond hearing

15  to determine whether Petitioner is a flight risk or a danger to the community is high such that this

16  factor weighs in favor of granting a bond hearing.  *See Doe*, 787 F. Supp. at 1094 ("[G]iven that

17  Petitioner was previously found to not be a danger or risk of flight and the unresolved questions

18  about the timing and reliability of the new information, the risk of erroneous deprivation remains

19  high."); *A.E.*, 2025 WL 1424382 at *5; *Ramazan*, 2025 WL 3145562, at *6.  Therefore, this factor

20  weighs in favor of granting a bond hearing and/or release.

21        Third, the government's interest in detaining Petitioner without a bond hearing is low.  *Doe*,

22  787 F. Supp. 3d at 1094 (citation omitted); *see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D.

23  Cal. 2019)) ("[T]he government's interest in re-arresting Ortega without a hearing before an IJ is

24  low. The allegedly material change of circumstances—the Order of Removal—occurred over a

25  year and a half ago, and during all that time, Ortega has strictly complied with all the requirements

26  of his release.  If the government wishes to re-arrest Ortega at any point, it has the power to take

27  steps toward doing so; but its interest in doing so without a hearing is low.  Accordingly, the

28  *Mathews* factors favor Ortega."); accord *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at

*3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). "The effort and cost to provide Petitioner with [a bond hearing] is minimal[.]" *Doe*, 787 F. Supp. 3d at 1094. Therefore, any additional burden from requiring the government to seek a bond hearing before it may re-detain Petitioner does not outweigh his liberty interest and the risk of erroneous deprivation. Accordingly, this factor weighs in favor of granting a bond hearing and/or release.

In sum, the Court finds that, under *Mathews*, Petitioner demonstrates a likelihood of success on the merits of his claims asserting violations of his procedural due process rights.

### C.    Irreparable Harm

The Court now turns to the second *Winter* factor. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).

Petitioner contends that absent a preliminary injunction, he will continue to suffer irreparable injury each day he remains in detention in violation of his Fifth Amendment rights. (Doc. 2-1 at 17-18). The Court agrees. As noted above, Petitioner shows that he is likely to succeed on the merits of his claim that his detention violates procedural due process. Therefore, Petitioner faces irreparable harm absent a preliminary injunction. This *Winter* factor weighs in favor of preliminary injunctive relief.

### D.    Balance of Equities and Public Interest

"When … the nonmovant is the government, the last two *Winter* factors 'merge.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020) (per curiam)).

Here, Respondents do not address the balance of the equities and public interest factors. *See* (Doc. 8). Thus, Respondents fail to show that any harm they face here is more than minimal,

1    and do not identify any material burden they would experience from issuance of the requested

2    injunction. Therefore, the Court has "'little difficulty concluding that the balance of hardships tips

3    decidedly in [Petitioner's] favor.'" *See Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713

4    F.2d 1432, 1437 (9th Cir. 1983)).

5         Additionally, the Court finds that the public interest also weighs in Petitioner's favor. "It

6    is always in the public interest to prevent the violation of a party's constitutional rights." *Index*

7    *Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (citation omitted);

8    *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("[P]ublic interest concerns are implicated

9    when a constitutional right has been violated, because all citizens have a stake in upholding the

10   Constitution.") (citations omitted). "The public has a strong interest in upholding procedural

11   protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the

12   public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL

13   1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST,

14   2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)).

15        Therefore, these *Winter* factors weigh in favor of granting preliminary injunctive relief.

16        **E.    *Maldonado Bautista* Action**

17        Petitioner refers to *Maldonado Bautista v. Santacruz*, Case No. 5:25-cv-01873-SSS-BFM,

18   and represents that, in that action, the Central District of California certified a nationwide class and

19   held that individuals like Petitioner, who entered the United States without inspection and were

20   apprehended after their entry, are detained under § 1226(a) and eligible for a bond hearing. (Doc.

21   2-1 at 12).

22        Insofar as Petitioner seeks relief from the Court regarding the government's specific

23   compliance with the ruling in *Maldonado Bautista*, Petitioner must request such relief in the Central

24   District of California. *See Brave & Free Santa Cruz v. Aragon*, No. 2:24-CV-02312-DAD-JDP,

25   2025 WL 2324172, at *5 (E.D. Cal. Aug. 12, 2025) (collecting cases and noting "that the

26   undersigned, a district judge in the U.S. District Court for the Eastern District of California, lacks

27   the authority to 'enforce' an injunction issued in the U.S. District Court for the Northern District of

28   California") (citing, *inter alia*, *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).

1    **F.    Remedy**

2    Based on the foregoing, the Court finds that Petitioner has met the requirements to issue a

3    preliminary injunction. Respondents do not assert that Petitioner is a flight risk or a danger to the

4    community. As § 1225(b)(2)(A) does not apply to Petitioner, Petitioner has therefore shown a

5    likelihood of success regarding his claim that the government may not detain him pursuant to §

6    1225(b)(2)(A). As Respondents do not provide any other basis to detain Petitioner and do not assert

7    any risk of flight or danger to the community, the appropriate remedy is Petitioner's immediate

8    release. In the event the government seeks to re-detain Petitioner, the government must provide

9    notice to Petitioner a minimum of seven days in advance and must hold a bond hearing before a

10   neutral arbiter pursuant to § 1226(a) and applicable regulations, at which Petitioner's eligibility for

11   bond must be considered.

12   Because Respondents have not provided any evidence of costs that it will incur due to

13   Petitioner's release (*see* Doc. 8), the Court finds that no security bond is required. *See Guillermo*

14   *M.R.*, 791 F. Supp. 3d at 1038; *see also Lepe*, 2025 WL 2716910, at *10 (noting that courts

15   "regularly waive security in cases like this").

16   **IV.    <u>Conclusion and Order</u>**

17   Accordingly, it is HEREBY ORDERED that:

18   1.  Petitioner's motion for a temporary restraining order (Doc. 2), construed as a motion

19       for preliminary injunction, is GRANTED;

20   2.  Respondents are ORDERED to release Petitioner immediately;

21   3.  Respondents are enjoined and restrained from re-detaining Petitioner unless the

22       government provides notice to Petitioner a minimum of seven (7) days in advance and

23       holds a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable

24       regulations, at which Petitioner's eligibility for bond must be considered, and where

25       the government must demonstrate by clear and convincing evidence that Petitioner is a

26       flight risk or danger to the community, such that physical custody is legally justified;

27       and

28

4. No later than January 6, 2026, the parties SHALL file a joint status report as to Petitioner's status and address therein whether a briefing schedule need be set to address the petition on the merits.

IT IS SO ORDERED.

Dated:  __**December 24, 2025**__          _____

UNITED STATES MAGISTRATE JUDGE