UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDEEP SINGH,<br><br>             Petitioner,<br><br>   v.<br><br>SERGIO ALBARRAN, *et al.*,<br><br>             Respondents. | Case No. 1:25-cv-01788-CDB (HC)<br><br>ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Docs. 1, 11, 12) |

Petitioner Amandeep Singh ("Petitioner"), a federal detainee proceeding by counsel, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 while in custody of ICE at the Mesa Verde Processing Center, located in Kern County, California. (Doc. 1). For the reasons set forth herein, the Court will grant Petitioner's petition for writ of habeas corpus.[1]

**I.   Relevant Background**

For the purpose of this order, the Court incorporates by reference the factual and procedural background set forth in the Court's order granting Petitioner's motion for temporary restraining order (construed as a motion for preliminary injunction) and requiring Respondents Sergio Albarran, in his official capacity as Field Officer Director of Immigration and Customs

---

[1] Both parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 9).

Enforcement ("ICE"), San Francisco; Todd M. Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security ("DHS"); and Pamela Bondi, in her official capacity as Attorney General of the United States (collectively, "Respondents") to release Petitioner from custody immediately.  (Doc. 11 at 2-3).

In that order, the Court found that Petitioner has met the requirements to issue a preliminary injunction as Respondents do not assert that Petitioner is a flight risk or a danger to the community, that 8 U.S.C. § 1225(b)(2)(A) does not apply to Petitioner and Petitioner has shown a likelihood of success on the merits regarding his claim that the government may not detain him pursuant to that statute, and because Respondents do not provide any other basis to detain Petitioner, the appropriate remedy is Petitioner's immediate release. *Id.* at 18.  The Court held that in the event the government seeks to re-detain Petitioner, the government must provide notice to Petitioner a minimum of seven (7) days in advance and must hold a bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a) and applicable regulations at which Petitioner's eligibility for bond must be considered.  *Id.*  The parties were ordered to file a joint status report as to Petitioner's status and address therein whether a briefing schedule need be set to address the petition on the merits. *Id.* at 19.

On January 6, 2026, Respondents timely filed the joint status report in compliance with the Court's order.  (Doc. 12).  Respondents represent that Petitioner was released from custody on December 29, 2025, and indicate the parties will not be submitting any additional arguments relating to Petitioner's petition and therefore do not request additional briefing to address the petition on the merits.  *Id.* at 1-2.

**II.    Governing Authority**[2]

   **A.    Relevant Statutory Framework (8 U.S.C. § 1225 and § 1226)**[3]

Section 1225 governs the detention of noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018); *see id.* at 282 ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention.").  In

---

[2] Respondents do not challenge the Court's jurisdiction over Petitioner's claim. *See* (Docs 1, 8, 11).

[3] *See* (Doc. 11 at 7-10).

2

contrast, § 1226 sets forth a "default rule" for noncitizens already present within the United States. *Id.* at 288.

Relevant here, § 1225(b)(1) applies to aliens "arriving in the United States" or aliens who have "not been admitted or paroled into the United States" and have not "affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the [two]-year period immediately prior to the date of the determination of inadmissibility."  8 U.S.C. § 1225(b)1)(A)(i), (iii)(II).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).  For § 1225(b)(2)(A) to apply, an examining immigration officer must determine that the individual is (1) an "applicant for admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." *See Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), -- F. Supp. 3d --, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025)).

### B. Overall Statutory Scheme

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989).  Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The term "inspection" is regularly used in statutory language to refer to a process that occurs at ports of entry. *Lepe*, 2025 WL 2716910, at *6 (citing *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021)).  Additionally, § 1225(a)(2) concerns "stowaways," namely a noncitizen who "obtains transportation without the consent of the owner … of any vessel … through concealment aboard," and is therefore discovered at a port of entry. *See id.*; 8 U.S.C.A. § 1101(a)(49).

An interpretation of a statutory provision that "would render another provision superfluous" violates a core judicial principle. *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010) ("This principle,

of course, applies to interpreting any two provisions in the [U.S. Code], even when Congress enacted the provisions at different times.").

The Supreme Court has explained that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (citations omitted). The distinction historically drawn between §§ 1225 and 1226, "making sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'" *Martinez*, 792 F. Supp. 3d at 221 (citing *Jennings*, 583 U.S. at 288-89).

### C. Laken Riley Act Amendments

Where "Congress has created specific exceptions" to a specific statute or rule, it does not prove that the rule does not generally apply. To the contrary, "it proves the opposite," namely that the statute or rule generally applies absent those exceptions, otherwise "the statutory exceptions would be unnecessary." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010).

In 2025, Congress passed the Laken Riley Act, adding § 1226(c)(1)(E), which mandates detention for any noncitizen who is both inadmissible under § 1182(a)(6)(A)(i) and "charged with, arrested for, convicted of, [or] admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E). However, if the inadmissibility of a noncitizen was, by itself, sufficient to mandate detention under section 1225(b)(2)(A), the Laken Riley Act amendment would have no effect. *See Martinez*, 792 F. Supp. 3d at 221. "This tension between sections 1225 and 1226 motivates the conclusion that they apply to different classes of aliens. Indeed, as the Attorney General has previously decided, 'section [1225] (under which detention is mandatory) and section [1226] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens.'" *Id.* (alterations in original; citing *Matter of M-S-*, 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019)). "If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they

have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025).

The amendments implemented by Congress in the Laken Riley Act further support the findings, as set forth by the Supreme Court in *Jennings*, that § 1225(b) applies to "aliens seeking admission *into* the country," and § 1226 applies to "aliens *already in* the country." *Jennings*, 583 U.S. at 288-89 (emphasis added).

### III. Discussion

Petitioner asserts two causes of action in his petition: claims for relief for (1) violation of the Immigration Nationality Act ("INA"), and (2) violation of procedural due process. *See* (Doc. 1 at 13-14). Because Respondents do not provide additional briefing or argument in the Court's consideration of Petitioner's petition on the merits (*see* Doc. 12 at 2), the Court addresses Petitioner's claims in turn below, incorporating and referencing its analysis in its order granting a preliminary injunction. *See* (Doc. 11).[4]

#### A.   Statutory Construction and Claim for Violation of the INA

In the Court's order granting a preliminary injunction, the Court found that the plain language of § 1225(b)(1) demonstrates that the statute is inapplicable to Petitioner as he is not "arriving" in the United States of America but rather arrived in February 2022 and has remained here for a period of over three years. (Doc. 11 at 8). After the Court reviewed the text and applicability of Section 1225(b)(2)(A), the Court found that Respondents failed to show that an examining immigration officer made the determinations required for that statute to apply to Petitioner. *Id.* The Court found that Respondents' interpretation of the statutory scheme (§ 1225 and § §1226) was without merit as Petitioner is not "seeking" "lawful entry" given he already entered the United States three years ago when he crossed into the territorial limits of the country in February 2022 and was ordered released on recognizance. *Id.* at 8-9. The Court found that Respondents' synonymous treatment of the terms "applicant for admission" and "alien seeking

---

[4] In granting a preliminary injunction, the Court considered and determined that waiver of Petitioner's prudential exhaustion requirement was appropriate. (Doc. 11 at 4-5). Respondents do not challenge that finding for purposes of the Court's determination of the merits of the petition. *See* (Doc. 12).

admission" erroneous as "Congress is presumed to have acted intentionally in choosing different words in a statute[] such that different words and phrases should be accorded different meanings." *Id.* at 9 (citing *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025); *Martinez*, 792 F. Supp. 3d at 218). Therefore, the Court found that Respondents set forth an interpretation of § 1225 that ignores the plain meaning of the language within that statute. *Id.*

Further, the Court noted that the applicability of § 1226(a) would be "unclear at best, if not entirely superfluous" if Respondents' interpretation—that § 1225(b)(2)(A) applies to any individual who has entered the country unlawfully without regard to the length of time they have resided within the country—was credited. *See id.* at 10 (citing *Lopez Benitez*, 795 F. Supp. 3d at 490 ("If … anyone who entered the country unlawfully … is subject to mandatory detention … then it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply … there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach.").

Considering Congress's passage of the Laken Riley Act and its applicability in light of § 1225 and § 1226, the Court found that the amendments implemented in the Act further support the finding that § 1225(b) applies to "aliens seeking admission *into* the country," and that § 1226 applies to "aliens *already* in the country." *Id.* at 11 (citing *Jennings*, 583 U.S. at 288-89) (emphasis added). The Court therefore found that Petitioner's detention is governed by § 1226(a)'s discretionary framework rather than § 1225(b)'s mandatory detention procedure. *Id.* (citations omitted).

Because Respondents have elected to make no additional argument in response to the Court's reasoning, considering the merits of Petitioner's petition, the Court finds that Petitioner is subject to the detention framework under § 1226(a) such that Respondents violated his rights under the INA in improperly finding him subject to mandatory detention under § 1225(b)(2). Petitioner's petition shall be granted as to this his claim for relief for violation of the INA.

///

///

///

**B.     Procedural Due Process**

   1.     Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest

7

in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

### 2. Analysis

The Court finds that, given Respondents elected to stand on their arguments already considered in the Court's order granting preliminary injunction, and for the same reasons the Court found that Petitioner is likely to succeed on the merits of his procedural due process claim, the Court will grant Petitioner's petition for writ of habeas corpus as to this claim.

Specifically, the Court reasoned that because Petitioner shows he has an underlying, continuing liberty interest from detention—as he was conditionally released on an order of recognizance, remained released from immigration detention for over three and a half years without incident and without any showing by Respondents that Petitioner failed to comply with the conditions of his release—protections under procedural due process are implicated such that the Court must determine what process is due before the government may terminate Petitioner's liberty interest. (Doc. 11 at 13-16).

The Court applied the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)—which "requires consideration of three distinct factors: [(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 14-15. The Court found that Petitioner has a substantial private interest in being out of custody. The Court reasoned that during his time out of immigration custody for over three and a half years, petitioner lived in Bakersfield, California, supporting his spouse without incident, arrest, or conviction of any crime, and has complied with all obligations of his release. Further, the Court found that there is considerable risk of erroneous deprivation given the record shows there were to procedural safeguards to determine if Petitioner's detention was justified, Respondents did not show any change in circumstances while Petitioner was on release sufficient to justify his detention, and the probable value of the additional procedural safeguard of a bond hearing to determine his

risk of flight or danger to the community is high such that the pre-deprivation process of a bond hearing is necessitated to justify Petitioner's re-detention. *Id.* at 15. Considering the last *Mathews* factor, the Court concluded that the government's interest in detaining Petitioner without a bond hearing is low. *Id.* at 15-16. Therefore, under *Mathews*, because Petitioner has shown that any additional burden from requiring the government to seek a bond hearing before it may re-detain Petitioner does not outweigh his liberty interest and the risk of erroneous deprivation, the Court concluded that Petitioner demonstrated a likelihood of success on the merits of his claims asserting violations of his rights under procedural due process. *Id.* at 16.

### C. *Maldanado Bautista* Action

As the Court considered in its order granting a preliminary injunction, to the extent Petitioner's petition seeks relief from the Court regarding the government's specific compliance with the ruling rendered in *Maldonado Bautista v. Santacruz*, Case No. 5:25-cv-01873-SSS-BFM, a nationwide class action in the Central District of California, Petitioner was advised that he must request such relief in that district. *Id.* at 17 (citing *Brave & Free Santa Cruz v. Aragon*, No. 2:24-CV-02312-DAD-JDP, 2025 WL 2324172, at *5 (E.D. Cal. Aug. 12, 2025) (collecting cases and noting "that the undersigned, a district judge in the U.S. District Court for the Eastern District of California, lacks the authority to 'enforce' an injunction issued in the U.S. District Court for the Northern District of California") (citing, *inter alia*, *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).

### IV. Conclusion and Order

Accordingly, it is HEREBY ORDERED that:

1. Petitioner's petition for writ of habeas corpus (Doc. 1) is GRANTED; and
2. The Clerk of the Court is DIRECTED to enter judgement accordingly and to close this case.

IT IS SO ORDERED.

Dated: **January 9, 2026**　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

9